```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

LOIS M. MCKEOWN,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Case No. CIV-17-136-RAW-KEW
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
            Defendant.              )
```

**REPORT AND RECOMMENDATION**

Plaintiff Lois M. McKeown (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 57 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade but was unable to pass the GED examination.  Claimant has worked in the past as a poultry dressing worker and security guard.  Claimant alleges an inability to work beginning May 7, 2014 due to limitations resulting from low back pain, neck pain, and an inner ear disorder.

### Procedural History

On August 5, 2014, Claimant protectively filed for disability

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On August 14, 2014, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 14, 2015, Administrative Law Judge ("ALJ") Deborah Rose conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On March 1, 2016, the ALJ issued an unfavorable decision. On June 24, 2016, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work. The ALJ also determined Claimant could perform less than a full range of light work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider Claimant's credibility; (2) failing to include all of her limitations in the RFC; and (3) failing to include an

4

analysis of Claimant's obesity and its effect upon her RFC.

## Credibility Determination

In her decision, the ALJ determined Claimant suffered from the severe impairments of degenerative joint disease and muscle spasms in the cervical and lumbar spine areas. (Tr. 29). The ALJ concluded that Claimant retained the RFC to perform less than a full range of light work. In so doing, the ALJ determined Claimant could lift, carry, push, and pull up to ten pounds frequently and 20 pounds occasionally. She could stand/walk for up to six hours in an eight hour workday and sit for up to six hours in an eight hour workday. Claimant could occasionally stoop or balance. She could be exposed to no hazards such as unprotected heights or moving dangerous machinery. She could not climb ladders, ropes, or scaffolds. (Tr. 30).

After consulting with a vocational expert, the ALJ concluded Claimant could perform her past relevant work as a poultry dressing worker, security guard, and plastics assembler/trimmer. (Tr. 32). As a result, the ALJ found Claimant was not disabled from May 7, 2014 through the date of the decision. (Tr. 33).

Claimant contends that the ALJ failed to properly assess her credibility and claims of pain. Claimant testified that she previously worked at Tyson Poultry processing frozen chicken by

5

moving chicken from a belt to trays. She was only required to lift and carry the weight of a chicken breast. (Tr. 43-44). From Tyson, Claimant worked at TEC, an employment company, trimming plastic parts for refrigerators. Little lifting was involved but Claimant had to bend down and stack the plastic on pallets. (Tr. 44). In 2010, Claimant worked for Professional Security for about four years doing security work. (Tr. 45). The job required walking about half of a block and the rest of the time alternating between sitting and standing in hour and a half to two hour intervals. (Tr. 47, 49). The only lifting/carrying involved a case of bottled water. She was fired from the job in 2014 because of insufficient paperwork and an inability to do the gates. She stated her concentration did not allow her to be alert. (Tr. 47-48). She returned to a plastics plant only to be fired two weeks later for and inability to complete her tasks. She also stated that the heat was intense and buzzing in her ears was "horrible." (Tr. 48-49).

Claimant also testified the physical difficulties which affected her ability to do her job were her hearing, an inability to concentrate properly, and muscle spasms. (Tr. 50). When Claimant's muscle spasms occurred, she testified that she would have to sit down or she "would probably fall." (Tr. 51). The spasms occurred in her shoulders and cervical spine down to her lower back. She stated that she experienced spasms on a daily basis. She had

problems with the condition when she bends the wrong way or if she looks straight up. If she remained on her feet, Claimant's calves swell and her legs get rigid. (Tr. 52-53). On a good day, Claimant estimated that she could be on her feet for 20-45 minutes but on a bad day, she could stand for 15-20 minutes. To relieve the condition, Claimant stated that she sits and uses a heating pad. She only took over the counter medication for the condition. She stated that she did not go to the doctor because she did not have health insurance or money. (Tr. 54).

Claimant testified that she experienced buzzing in her ears all of the time. If she gets active like walking or bending over, the buzzing worsens and her balance is affected. (Tr. 55). She has found no relief for the condition. (Tr. 56).

Claimant's concentration was also limited. She found that she forgets things like turning on the stove to cook food once or twice per week. (Tr. 56).

Claimant lived in a trailer house by herself. She had no children. Her sleep is limited to four to five hours because of the buzzing in her ears. (Tr. 57). It took her days to do what used to take minutes or hours, such as mowing the grass and trimming trees. She drives a car. She did not believe that she could return to her work as a security guard because of walking and concentration difficulties. Claimant also did not believe she could return to her

"past factory work" because of problems with speed and mental agility. (Tr. 59).

Claimant had not sought medical treatment since July of 2014 at the time of the hearing. She had not been on any medication since that time. She believed her blood pressure was high. (Tr. 60). Her blood pressure was normal when she was not having muscle spasms but Claimant had not been on any medication for spasms. Upon inquiry by the ALJ, Claimant stated that a free or low cost clinic was available in the Fort Smith, Arkansas area around where Claimant lived but she had not been to the clinic. (Tr. 61). Claimant stated that she took Tylenol in 100 mg dosages, once every four hours. (Tr. 61-62).

Claimant's trailer is paid off, her girlfriend helps to pay the electric bill, she receives food stamps for her groceries, and her sister-in-law buys her cigarettes and other necessities. (Tr. 62-63).

Medical evidence from the Poteau Health and Wellness Center indicate Claimant reported ringing in her ears and balance problems in July of 2014. She was noted to have blood pressure of 160/106 on July 17 and she was prescribed Lisinopril. (Tr. 252-53). On July 30, Claimant's blood pressure had improved to 143/95 and she continued on medication. (Tr. 256, 258). No other abnormal findings were noted and she was found "in no acute distress." (Tr.

256).

On October 18, 2014, Claimant underwent a consultative examination by Dr. Russell Zweiner.  She complained of "brain fog, hearing impairment, severe muscle spasms, sleep disturbance due to buzzing in ears."  The report notes Claimant should be taking Lisinopril but she could not afford it.  The examination noted tenderness and muscle spasms along the lumbosacral spine, range of motion pain in the cervical spine on extension but normal range of motion, and tenderness and muscle spasms along the cervical spine.  Thoracic spine was non-tender with full range of motion.  Lumbosacral spine range of motion was normal with the exception of pain on flexion and extension.  Straight leg raising reflex was negative bilaterally in the sitting position and positive in the supine position.  Deep tendon reflexes were normal in all extremities bilaterally with no sensory or motor deficit.  Claimant's gait was safe and stable with appropriate speed.  No walking aid was required. No identifiable muscle atrophy was noted.  Heel/toe walking was normal.  Tandem gait was within normal limits.  Dr. Zweiner concluded

> Overall, my impression is that she does not have objective findings correlating to her subjective complaints, with notable exception to her muscle spasms in her back.  I do feel this would negatively impact her ability to perform work; however, if she was able to see a physician, she would probably be able to get medicine

> to help with this.  I do feel that her physical exam did correlate correctly with her muscle spasms in her back. Again, further documentation would be greatly assistive. Also, of note, she does smoke 8-10 cigarettes a day since the age of 18.  Overall, I do feel that she may have mild impediments to performing gainful work based on her back complaints but further documentation would be greatly assistive.  I do recommend the patient see a doctor for this as I do feel that this condition could be treated.

(Tr. 270).

The ALJ concluded Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (Tr. 31).  She discussed Claimant's medical record and found her claims that she was unable to perform any work activity was not credible.  The ALJ determined Claimant's activities of daily living indicated she could take care of personal needs, could prepare simple meals and do light housekeeping chores, and could clean house and help out around the house.  The ALJ found the "overall evidence of record indicates she is capable of performing the range of light work" set out in the RFC.  (Tr. 32).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such,

will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ sufficiently linked the medical evidence to the findings on credibility. In particular, the ALJ identified significant contradictions between the medical findings and Claimant's assertions of impairment. "[A] formalistic factor-by-factor recitation of the evidence" is not required to support the necessary analysis. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's discussion and the references to the objective

11

record contained in it, considered in toto, is sufficient to support the credibility findings of the ALJ.

### RFC Determination

Claimant contends the ALJ failed to include muscle spasms in the RFC. She also contends her inability to focus and concentrate and her memory problems should have been included as additional limitations in the RFC. The ALJ included Claimant's muscle spasms as a severe impairment incident to her broader back conditions. She cited to Dr. Zweiner's examination findings that Claimant had normal manipulation, range of motion of the spine, no sensory deficits, and safe and stable gait. The ALJ acknowledged that Claimant suffered from muscle spasms and recited the testing which revealed degenerative changes in her spine. At this point, the ALJ deviated from the recommendation of the reviewing consultative physicians that Claimant could perform medium work and, instead, concluded that her degenerative changes and muscle spasms would limit Claimant to light work. She also found that light work was supported by Claimant's daily activities. (Tr. 32).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287

F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ properly considered Claimant's muscle spasms in the formulation of her RFC assessment. The assessment was supported by substantial evidence.

Claimant also contends her mental conditions of a lack of focus and concentration and memory problems should have been included in the RFC. The ALJ considered the condition but found that Claimant had no mental health treatment or hospitalizations and took no medication for the condition. Dr. Zweiner evaluated

13

Claimant on November 4, 2014 and found her to be awake, alert, and oriented x 3. Her recent and remote memories were intact, speech 100% intelligible, thought processes appeared normal, with no sign of overt pathology noted. (Tr. 270). Consultative reviewer Dr. Joan Holloway found no medically determinable impairment which would cause concentration problems. (Tr. 103). Again, Claimant fails to offer or reference any objective medical evidence which would suggest Claimant is limited in her concentration or memory while evidence from medical professionals indicate no such limitations.

### Consideration of Obesity

Claimant also contends the ALJ failed to consider her obesity in the RFC evaluation. Claimant is 62.5 inches in height and she weighs 171 pounds and is obese. (Tr. 252). An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a

14

listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However, speculation upon the effect of obesity is discouraged.[2] *See*, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.).

The ALJ set forth Claimant's height and weight but did not specifically discuss the effects of her obesity upon her other impairments. The medical record does not indicate and Claimant has not directed this Court to the presence of any functional limitations which would stem from Claimant's obesity. She did not testify as to any limitations which she experiences as a result of her obesity. The diagnosis of the condition does not automatically translate into functional limitations. Therefore, "the factual record does not support [Claimant's] position that her obesity, either alone or in combination with other conditions, precludes her

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

15

from performing [her past relevant] work." Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015) quoting Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004). The ALJ did not err in her consideration of Claimant's obesity.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE